**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

STEVEN MICHEAL IDE, II,                    )
                                            )
             Plaintiff,                     )
                                            )
       v.                                   )          Case No. 4:21-CV-1238 HEA
                                            )
BRENDA SHORT, et al.,                       )
                                            )
             Defendants.                    )

<u>**OPINION, MEMORANDUM AND ORDER**</u>

This matter is before the Court upon the amended complaint of self-represented plaintiff Steven Micheal Ide, II. ECF No. 13. The Court previously granted plaintiff *in forma pauperis* status and is, therefore, required to review the amended pleading pursuant to 28 U.S.C. § 1915(e)(2). For the reasons discussed below, the Court will dismiss this action because it fails to state a claim upon which relief may be granted.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible

claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

On October 14, 2021, self-represented plaintiff Steven Micheal Ide, II, a pretrial detainee at the Jefferson County Jail (the "Jail"), filed the instant action on a form complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff named the Jefferson County Jail Administrator, Brenda Short, as the sole defendant in her official and individual capacities.

In the "Statement of Claim" section of the Court-provided form complaint, plaintiff presented the following allegations in their entirety:

1. While incarcerated in Jefferson County Jail I noticed some very disturbing Administrative errors going on.

2

2. This has occurred from 8/20/21 to [] current 10/8/21

3. Jefferson County Jail

4. All the Administrative errors have to do with the quarantine processes being complet[e]ly ignored and any an[d] all the detainees are subject to compromising and life threatening illnesses on the daily due to complete and I mean complete disregard to the citizens/detainees health and welfare

5. The defendant has made the grievance process completely uneffective [sic] due to the proper procedure being disregarded. The defendant has not stopped the endangerment to the health and welfare of the detainees. The defendant has responded very unprof[]es[s]ional and complet[e]ly lost all due process

*Id.* at 3-4.

Plaintiff left the "Injuries" section of his form complaint blank. For relief, plaintiff requested "the courts to make the situation better for any and all future inmates, to make any and all proper procedures available[.]" *Id.* at 5.

On October 27, 2021, the Court reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915, and determined his claims against defendant Short were subject to dismissal. ECF No. 8. The Court explained that an official capacity suit against a public employee is actually a suit against the public employer and, to the extent defendant Short was an employee of the Jail, plaintiff's claim failed because a department of local government is not a suable entity. In the event Jefferson County could be substituted as defendant's employer, the Court determined his official capacity claim was still subject to dismissal because he did not allege facts supporting the proposition that his constitutional rights were violated due to an unconstitutional policy, custom, or failure to train on the part of Jefferson County. *Id.* at 5-8.

As to plaintiff's individual capacity claims, the Court found they were also subject to dismissal for four reasons: (1) failure to allege facts establishing a causal connection between any

3

action taken by defendant and the deprivation of plaintiff's constitutional rights; (2) failure to allege an injury as a result of defendant's actions; (3) failure to state a claim regarding the Jail's grievance process because there is no federal constitutional right to a prison grievance procedure; and (4)  inappropriately attempting to assert claims on behalf of other prisoners.

Because plaintiff is a self-represented litigant, the Court directed him to file an amended complaint to cure his pleading deficiencies. Plaintiff was provided with detailed instructions on how to properly submit his amended complaint.

### The Amended Complaint

On November 22, 2021, plaintiff submitted an amended complaint on a Court-provided form. ECF No. 13. In the section designated to list the defendants, plaintiff names both the Jail and Brenda Short in her official and individual capacities. Attached to the form complaint is a seven-page handwritten statement of the claim. *Id.* at 11-18.

Plaintiff asserts he has "experienced total and complete neglect for [his] heath [and] welfare . . . [e]very time [he has] been incarcerated in Jefferson County Jail." He states he experienced Covid-19 symptoms, which was emotionally and physically difficult for him. He does not allege, however, that he tested positive for Covid-19 or that he was denied a specific request to be tested. Instead, plaintiff focuses on allegations related to the handling of his grievances and his belief that the Jail failed to make "certain that all preven[ta]tive measures have been done to ensure the safety for inmates." He asserts "health and welfare [are] in jeopardy every time anyone comes to this facility nor can you have or file a valu[a]ble complaint because administration [and] staff differs, by not accepting accountability or out[]right failure to abide or provide a solution."

4

Plaintiff provides a dated "ledger" detailing events that allegedly occurred from September to November 2021. *Id.* at 13-17. On September 12, plaintiff asserts he was "placed on Covid-19 Quarantine" after multiple inmates tested positive. Two days later, plaintiff submitted a grievance "asking administration to change quarantine process to help with containment of ailment." On September 20, after receiving an allegedly "invalid/unprofessional" response, he requested a grievance appeal. On September 22, he was again placed in quarantine which he attributes to the Jail's "inability to change the containment process." On the same date he submitted a second grievance "asking to please change the containment process." On October 4, he asserts the Jail "failed to administer Covid-19 screening." He admits, however, that on October 8, a Covid-19 screening was administered. Plaintiff submitted additional grievances seeking "receipts from prior incarceration" and "asking to make face mask[s] available." Plaintiff complains he received an unprofessional and inadequate responses.

On October 29, plaintiff states he received "confirmation . . . from trustees" that the Jail permits individuals to handle food before being screened for Covid-19. On the same date, plaintiff "asked staff for [a] face mask" but was told by an unidentified officer that no masks were available. On October 30, he submitted a grievance about an issue with his Jail-issued pin number. He states he was subsequently denied phone privileges, which he alleges was in retaliation for filing internal complaints, but admits he was told by a correctional officer that his phone privileges were suspended "due to [his] commissary account being in the negative."  Plaintiff states he requested permission for a fellow inmate to donate funds to his account, but the request was denied. He then alleges he received another "unprofessional" grievance response. On November 6, plaintiff states he spoke to defendant Shore about restoring his phone privileges, and she also informed him he

was not entitled to such privileges because his commissary account had a negative balance. Plaintiff filed another grievance. Plaintiff further complains that newly incarcerated inmates are not tested for Covid-19 before being placed in his dorm.

Plaintiff describes his injuries as "severe mental anguish from . . . the almost daily introduction of this serious life threatening ailment." He further states he has suffered from "many physical changes/injuries," but to "state any one physical injury would be at this time a total disregard of the complaint."

Attached to the complaint are two grievance forms, dated October 14, 2021 and October 15, 2021, and a letter, dated October 25, 2021, in which plaintiff requested his inmate account history and specific receipts from defendant Short. ECF No. 13-1. Also attached are two undated notebook pages with the notation "Denied. B. Short;" an undated note from defendant Short directing plaintiff to "ask an officer," and a grievance response informing plaintiff he cannot receive copies of individual receipts.

**Discussion**

After carefully reviewing the amended complaint and giving it the benefit of a liberal construction, the Court concludes it must be dismissed against both the Jail and Brenda Short in her official and individual capacities.

**A. Defendant Jefferson County Jail**

As the Court explained in its October 27, 2021 Memorandum and Order, the Jefferson County Jail is a department of local government, and, as such, it is not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of police department because it was not a juridical entity); *Owens v. Scott Cty. Jail*, 328

6

F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Thus, plaintiff's claims against the defendant Jail must be dismissed for failure to state a claim.

## B. Defendant Brenda Short

### 1. Official Capacity Claim

Plaintiff alleges defendant Short is an employee of the Jail. A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). As explained above, a suit against the Jail must be dismissed because it is not a suable entity.

Even if Jefferson County can be substituted as defendant Short's employer, plaintiff's official capacity claim fails. A local governing body such as Jefferson County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). The county cannot be held liable, however, simply because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality . . .  cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct.

*Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Jefferson County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

>    2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>    3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, plaintiff has not alleged any facts supporting the proposition that his constitutional rights were violated due to an unconstitutional policy, custom, or failure to train on the part of Jefferson County. With regard to policy, plaintiff's facts point to no Jefferson County "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" as causing him harm. While he alleges the Jail's "preventative measures," "containment process," and grievance responses were inadequate, he fails to demonstrate they were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Significantly, plaintiff does not identify or describe a specific policy. To the contrary, plaintiff generally alleges a lack of "preventative measures" and need to "change [the] quarantine process to help with containment." He states "trustees" told him unidentified individuals could handle food without "screening" and other inmates told him they were not tested prior to admission into the institution. Plaintiff's

conclusory allegations do not indicate that the Jail's reaction to COVID-19 were the result of deliberate choices made by municipal officials.

As to an unofficial custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Jefferson County employees, much less that Jefferson County officials were deliberately indifferent to or tacitly authorized such misconduct. Plaintiff's facts amount to a vague allegation that the quarantine processes are insufficient at the Jefferson County Jail, but he provides no support for the contention that his constitutional rights were violated, nor does he demonstrate a pattern of unconstitutional acts.

Likewise, plaintiff has not demonstrated the existence of a failure to train or supervise because he has not alleged a "pattern of similar constitutional violations by untrained employees." Rather, as discussed above, plaintiff's general complaints about "quarantine processes" at the Jefferson County Jail do not indicate a pattern of constitutional violations by employees of Jefferson County.

For the reasons discussed above, plaintiff has failed to allege facts showing that Jefferson County violated his constitutional rights due to a policy, custom, or failure to train. Thus, to the extent that Jefferson County can be considered defendant's employer, the claim against it is subject to dismissal. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### *2. Individual Capacity Claim*

The only individual named in this action is the Jail Administrator, Brenda Short. The substance of plaintiff's amended complaint concerns two allegations: (1) his grievances were insufficiently handled as he either received no responses or unprofessional responses; and (2) the Jail failed to institute proper preventative measures and containment processes to manage the Covid-19 pandemic.

First, as explained in the Court's October 27, 2021 Memorandum and Order, his allegations regarding the grievance procedure fails to state a claim. It is well established there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability). Also, there is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate); *see also Burnside v. Moser*, 138 Fed. App'x 414, 416 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process). Therefore, if a state elects to provide a grievance mechanism, violations thereof will *not* give rise to a § 1983 claim. For these reasons, plaintiff's claims against defendant Short as to the handling of his grievances fail to state a claim upon which relief may be granted.

Second, plaintiff's assertions regarding the Jail's quarantine procedures during the Covid-19 pandemic fail to state a claim upon which relief may be granted as to defendant Short as he has failed to make any specific allegations against her. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, plaintiff has not set forth any facts indicating that Brenda Short was directly involved in or personally responsible for the alleged violations of his constitutional rights as to the containment of Covid-19 within the Jail. He does not allege she was responsible for the two times he was in quarantine, that she personally declined to administer testing, denied him a mask, or directed how food could be handled during the pandemic. As a result, the complaint fails to state a claim upon which relief can be granted. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

Even if plaintiff sufficiently alleged defendant Short's personal responsibility as to the Covid-19 measures, or alleged lack thereof, he fails to state a conditions of confinement claim under the Eighth Amendment. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the

12

conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) and *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To establish a conditions of confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

Plaintiff complains about the Jail's "containment process" and seeks stricter "preventive measures," but the Court cannot find that his descriptions of the Jail's protocols appear unconstitutional. He asserts he was "placed on quarantine" on September 12, 2021 because "multiple inmates experience[ed] symptoms . . . and a positive screening," and was placed in quarantine again on September 22, 2021. Plaintiff complains the Jail failed to administer a "Covid-19 screening" on October 4, 2021, but admits such screenings were completed four days later. The fact the Jail is engaged in screening inmates and "separating and quarantining COVID positive patients indicates that the [institution] is not being deliberately indifferent to the needs of the inmates that are not positive." *Engel v. CO1*, No. 4:20-CV-1908 CDP, 2021 WL 1198061, at *3-4 (E.D. Mo. Mar. 30, 2021). *See  also Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir.

2020) (explaining that the quarantining of "any inmate exposed to Covid-19 is strong evidence that [the defendants] are responding reasonably to the risk posed by the virus").

Plaintiff further asserts he spoke to "trustees" and other inmates, in which he learned that food could be handled without a Covid-19 screening, and newly admitted inmates were not tested prior to being placed in his housing unit. Plaintiff appears to allege there should be a change in Jail policy requiring that all inmates should be tested for Covid-19 prior to entering the Jail or if they are food handlers. Plaintiff does not allege, however, that he contracted Covid-19 or that he was denied a test when he felt he was experiencing symptoms. *See e.g., Garner v. Keen*, No. 4:20-CV-1690-RWS, 2021 WL 1923507, *5 (E.D. Mo. May 13, 2021) (dismissing complaint on initial review where inmate complained about quarantine measures but had not contracted virus). Although he generally alleges "severe mental anguish" and "physical changes/injuries, he does not describe or name a specific ailment or injury and he does not allege any connection between his vague assertion of injuries and the manner in which food was handled or inmates were admitted into the Jail. The Prison Litigation Reform Act states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see also McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018) ("We interpret the PLRA to require more than a de minimis physical injury.").

Lastly, to any extent plaintiff complains his loss of phone privileges denied him a constitutional right, such an allegation simply does not rise to the level of an Eighth Amendment violation. *See Coe v. Dysinger*, Case No. 1:20-CV-69 DDN, 2020 WL 3791536, at *10 (E.D. Mo. July 7, 2020), *aff'd*, 2020 WL 8262231 (8th Cir. 2020) ("lack of access to phone" is not a condition

14

which denies an inmate "of the minimal civilized measure of life's necessities from a deliberate indifference to plaintiff's health and safety"). Moreover, plaintiff does not allege facts to support his denial of phone privileges were retaliatory as he admits he was told the reason for the denial was due to his commissary account balance.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint because it fails to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 17th day of December, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE